In the Matter of COURT SQUARE BUILDING, INC., Respondent. ILLUSTRATED TECHNICAL PRODUCTS CORP., Appellant.

First Department, March 15, 1948.

*Alfred Englander* for appellant.

*Leslie Lester* for respondent.

CALLAHAN, J. The tenant appeals from a final order in a proceeding brought by the landlord for fixation of emergency rent under the provisions of the Business Rent Law (L. 1945, ch. 314, as amd.).

On or about January 11, 1945, the parties entered into a written lease for an office designated as suite 1009 on the 10th floor of the Court Square Building for a period commencing January 15, 1945, and ending April 30, 1946, at a rental of $2,280 per annum and payable in installments of $190 per month during the term of the demise.

On May 1, 1946, the landlord notified the tenant that the lease was being extended on a month to month basis at the emergency rent of $258.75 per month, and a demand was made for payment of the May, 1946, rent at this rate. The tenant, however, offered the sum of $147.49 per month as the emergency rent for its space, but the tender was refused.

The landlord thereupon commenced summary proceedings in the Municipal Court for nonpayment of rent. The trial resulted in a determination in favor of the tenant and a dismissal of the petition without prejudice to any other proceeding available to the the landlord to fix the value of the premises occupied by the tenant as of the so-called " freeze " date under the emergency rent law. This disposition was made on the ground of inability to determine the rental paid by the former tenant of the space in question on June 1, 1944, designated as the maximum rent date under the statute for the stabilization of business rents (L. 1945, ch. 314, §§ 1, 2, as amd. by L. 1946, ch. 273).

Thereafter and on or about April 14, 1947, the landlord instituted this proceeding in the Supreme Court to fix and determine the emergency rent for suite 1009 occupied by the tenant upon the basis of the rent reserved or payable under the lease, agreement or tenancy affecting such space on June 1, 1944, or upon the basis of the rent charged on such date for the most nearly comparable business space in the same building or other rental area (L. 1945, ch. 314, § 2, subd. [c], as amd. by L. 1946, ch. 273).

On June 1, 1944, the space in question was occupied by the City of New York. The rent paid by the city at that time plus 15% would be the emergency rent of the present tenant under the statute (§ 2, subd. [c]). Ordinarily there should be no difficulty in determining the rent paid by a former tenant. It appears, however, that on June 1, 1944, the city occupied the entire 11th floor as well as the space of the tenant on the 10th floor of the building at the single and indivisible rental of $20,807 per annum. The city went into possession of the 11th floor premises in June, 1934, and continued to hold the same under various leases at a rental of $20,000 per year. In July, 1940, the 10th floor space was included under a renewal lease without additional charge to the city. On October 22, 1942, a further renewal of lease expiring June 15, 1944, was made with the city at the overall and indivisible rental of $20,807 per annum for the single unit consisting of the 11th floor and what is now suite 1009 without any breakdown of the rental in relation to any part of the demised premises.

To establish the rent paid for the 10th floor space occupied by the city on June 1, 1944, the landlord introduced into evidence a letter from the Board of Estimate of the City of New York, and reading as follows:

" According to the Real Estate Board's method of measurement the 11th floor contains 13,413 usable square feet of floor space and in addition to this floor, the Commissioner of Investigation is using 2,000 square feet of floor space on the 10th floor making a total of 15,413 square feet.

" The Arbitration Committee recently fixed the fair rental for the upper floors in the above building stating that a basic rental for the upper floors was $1.35 per square foot. At this rate the rental for the space occupied by the Commissioner of Investigation amounts to $20,807."

The landlord argues from this letter that the city paid $18,107 per annum for its 11th floor space containing 13,413 square feet at a rate of $1.35 per square foot per annum, and that it necessarily follows that the rental for the city's space on the 10th floor now occupied by the tenant as suite 1009 was $2,700 per annum or $225 per month as of June 1, 1944. It is pointed out that any lower rental for the latter space would not bring the city's total rent to $20,807 per annum as reserved in the lease for its entire space. However, the parties agree that suite 1009 is not 2,000 square feet in fact, but that it contains approximately 1,215 square feet of floor space.

The tenant contends that the only elements relevant in determining the emergency rent in this case are the area of 1,215 square feet for suite 1009, multiplied by the annual rate of $1.35 per square foot, plus 15%. This would seem to be an oversimplification of the problem in view of the fact that the space in question constitutes only a small portion of the premises occupied by the city on June 1, 1944, and for which an indivisible and overall sum of $20,807 per annum was paid without any breakdown or allocation of the rent to any particular portion of the rental unit comprising the entire 11th floor and suite 1009 involved in this proceeding.

The trial court has found in accord with the landlord's contention that the letter of the Board of Estimate establishes a rent for the city in the sum of $2,700 per annum or $225 per month for suite 1009 on the maximum rent date, and that this sum plus 15% fixes the emergency rent to be paid by the tenant for such space at $3,105 per annum or $258.75 per month.

Of course, the figure of $2,700 per year is a proper mathematical calculation on the basis of 2,000 square feet at the rate of $1.35 per square foot. But this disregards the physical fact that the tenant's space contains only 1,215 square feet based on the landlord's own measurements. There is no explanation why the correspondence from the Board of Estimate describes the city's space on the 10th floor of the building as containing 2,000 square feet, nor is there any explanation of the manner in which the rate of $1.35 per square foot was reached by the arbitration committee as a fair rental for the upper floors of the building. It may be that this rental was fixed in relation to an entire floor without deduction for hallway, washrooms, and so-called " utility " space. For that matter, the suggestion is made that the 2,000 square feet charged to the city included 1,215 square feet in suite 1009 and approximately 800 square feet of corridor, washroom and elevator space. In any event we have no proof as to the question submitted to arbitration or the basis of the decision. It is apparent, therefore, that it is impossible to ascertain on the present record what portion of the total rental of $20,807 per annum paid by the city on June 1, 1944, for its entire space is to be allocated to suite 1009 occupied by the tenant in this proceeding.

While the statute plainly indicates that the rent paid for the same premises on June 1, 1944, shall govern in determining the emergency rent, it is not clear how such rent shall be

fixed in a case like the present where the former tenant was paying for more than one unit of space a single or lump-sum rental without regard to the value of any portion of the rental area. In a situation of this sort it seems proper to permit proof as to the method employed in determining the rent formerly paid for the space in question. To the extent that it serves this purpose the letter of the Board of Estimate was rightly received in evidence. We consider, however, that all the facts and circumstances tending to establish an agreement by the city to a particular rent for its 10th floor space and the basis for such agreement should be presented. If it develops that no agreement was made with respect to the rent for such space alone and apart from the entire premises occupied by the city or that it is impossible to allocate any particular portion of the rent paid by the city to suite 1009 occupied by the present tenant, we think that the statute permits the receipt of evidence as to the rent charged on the maximum rent date for the most nearly comparable space in the same building or other rental area, or other satisfactory evidence. The rejection of such proof on the trial of this proceeding was error.

We think that the present record does not sufficiently establish an agreement by the former tenant for an annual rent of $2,700 on the maximum rent date for the space under review. The letter of the Board of Estimate on which the landlord relies for this purpose merely indicates that a basic rental of $1.35 per square foot per annum had been fixed by arbitration for an area much larger than the space involved in this proceeding. It does not unequivocally establish how that rental should be applied to a floor of the building divided or partitioned into office suites.

It is our conclusion that the order entered November 3, 1947, fixing the emergency rent, and the order entered October 27, 1947, should be reversed and a new trial ordered, with costs to the appellant to abide the event.

PECK, P. J., COHN, VAN VOORHIS and SHIENTAG, JJ., concur.

Order entered November 3, 1947, fixing the emergency rent, and order entered October 27, 1947, unanimously reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.